**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello (SBN 244256)
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
Tele: (310) 400-4001
Email: rmarticello@raineslaw.com

-- and --

Mark S. Melickian (IL SBN 6229843) (pro hac vice)
David M. Madden (IL SBN 6280517) (pro hac vice)
30 North LaSalle Street, Suite 3100
Chicago, IL 60602
Telephone: 312.704.9400
Email: mmelickian@raineslaw.com
        dmadden@raineslaw.com

Proposed Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In re: | Case No.: 24-25181-RHS |
| DIAMOND K LLC, | Chapter: 11 |
|       Debtor in Possession | DCN: RFL-6 |
| PO Box 3222<br>Yuba City, CA 95992<br>EIN: 68-0446259 | **MOTION FOR ORDER:** |
| | **(1) AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 623 N. REXFORD DR., BEVERLY HILLS, CALIFORNIA 90210 PURSUANT TO 11 U.S.C. § 363(B) AND (F);** |
| | **(2) APPROVING BUYER AS GOOD-FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); AND** |
| | **(3) AUTHORIZING PAYMENT OF ORDINARY COSTS OF SALE** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF KAMALJIT KAUR KALKAT AND ESTELLE ARLENE MARCO IN SUPPORT** |
| | Hearing to be set |

1

**TO THE HONORABLE RONALD H. SARGIS, UNITED STATES BANKRUPTCY JUDGE:**

Diamond K, LLC (**"Debtor"**), the debtor and debtor-in-possession in the above captioned case (the **"Case"**), hereby submits this *Motion for Order (1) Authorizing Sale of Real Property Located at 623 N. Rexford Dr., Beverly Hills, California, 90210, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C § 363(m); and (3) Authorizing Payment of Ordinary Costs of Sale* (the **"Motion"**). In support of the Motion, the Debtor submits the attached Declarations of Kamaljit Kaur Kalkat and Estelle Arlene Marco.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Debtor seeks to sell the residential property located at 623 N. Rexford Dr., Beverly Hills, California, 90210 (the **"Property"**). The Property consists of land and a single-family home. The Debtor has marketed the Property as a tear-down, with the value mainly in the land. The proposed sale is an "all cash" sale to Estelle Arlene Marco (the **"Buyer"**) for $5,500,000 (the **"Sale Price"**) subject to one contingency—the Court's approval.

The sale is supported by a sound business decision. A significant component of the Debtor's strategy in this Case is to sell its residential real property for the highest and best price. While the Sale Price is not as high as the Debtor had hoped, it exceeds prior indications of value and reflects the highest price offered post-petition. The proposed sale provides certainty and avoids the risk that a longer sale process will not result in a higher price. Moreover, the sale will substantially reduce the allowed claims secured by the Property and, thereby, reduce the deficiency claims that may otherwise be asserted in this Case. Thus, the sale helps move the Case forward toward satisfying the debts asserted against the Debtor.

Approval of the sale free and clear of liens pursuant to 11 U.S.C. § 363(f) is appropriate.  The proposed sale will be sufficient to pay in full real property taxes and the first-in-priority asserted secured claim.  The Sale Price of $5,500,000 will substantially pay down the second-in-priority asserted secured claim.  As discussed below, based on the communications between counsel, the Debtor is hopeful that the junior asserted secured creditor will to consent to the sale of the Property at the Sale Price.  However, such consent is not required.  The sale of the Property free and clear of liens is proper with or without the consent of the parties asserting security interests therein pursuant to Ninth Circuit law and § 363(f)(1) and (5).

Accordingly, the Debtor requests that the Court approve the proposed sale to the Buyer.

## II.      STATEMENT OF FACTS

### A.      General Background

On August 19, 2024, prior to filing the instant Chapter 11 cases, the Debtor and Kamaljit Kaur Kalkat ("**Kalkat**" and collectively with the Debtor, the "**Debtors**"), with assistance of different counsel, filed voluntary petitions for relief under Chapter 12 of the Bankruptcy Code, Case Nos. 24-23664 and 24-23666 (the "**Chapter 12 Cases**").  On October 31, 2024 (the "**Dismissal Date**"), the Court entered an order dismissing the Chapter 12 Cases for several reasons, including that the cases did not meet the requirements of Chapter 12 and the Bankruptcy Code.  (*See* Case 24-23664 [Docket No. 52].)

Two weeks after the Dismissal Date, on November 14, 2024 (the "**Petition Date**"), the Debtors filed their voluntary Chapter 11 petitions, commencing the instant cases.  The Debtors are operating their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

The Debtor filed its schedules on December 18, 2024 [Docket No. 45], within the extended deadline authorized by the Court.

### B.　　Diamond's Business

Ms. Kalkat is the sole member and manager of the Debtor.  The Debtor is primarily in the business of acquiring, improving, and selling luxury residential properties in Southern California.  The Debtor owns one almond farm and three residential real properties, including the Property.  Each property is subject to one or more asserted secured claims.  Certain of the creditors of the Debtor also assert claims against Ms. Kalkat.  Each property owned by the Debtor was subject to a noticed foreclosure sale prior to the Petition Date.

The Debtors filed their petitions on an emergency basis on November 14, 2024, to stay foreclosure sales of certain real properties of Ms. Kalkat and the Debtor scheduled for November 15, 2024.

The Debtor's strategy in this Case is to list and sell all of its residential real properties with the hope that a focused and orderly sale process in bankruptcy will maximize the value received for each property.  The sale of the residential properties will satisfy a number of secured claims and will largely address the Debtor's financial distress that led to the commencement of the Case.

### C.　　The Marketing of the Property

The Debtor acquired the Property with the intent to improve and sell it.  The Debtor acquired the Property for $7,000,000.  It was the Debtor's first acquisition in Beverly Hills and the Debtor was told there was a competing offer at $6,800,000.  The Debtor made a down payment of $200,000 and the balance of the $7,000,000 purchase price was financed.  Due to the Debtor's overall financial distress and unfavorable conditions in the financial and real estate markets following the Debtor's acquisition of the Property, the Debtor was unable to finance the improvement of the Property and resell it for a profit as originally planned.  Additionally, due to a lack of cash flow from the Property and the Debtor's other properties, the Debtor was unable to service the loans secured by such properties.

In an effort to mitigate potential losses, the Debtor shifted its strategy away from improving the Property and instead attempted to sell it as-is.  Pre-petition, the Debtor listed the Property with Compass for approximately one year ending in May 2024.  The listing did not

4

result in any actionable offers. The Property was listed by broker Douglas Elliman pursuant to a listing agreement commencing July 11, 2024, and expiring August 11, 2024. That listing resulted in an offer in the amount of $4,800,000 (the "**Prior Offer**") and the Property was under contract at that price prior to the commencement of the Debtor's Chapter 12 case. The Debtor does not believe that the Prior Offer is indicative of the Property's true value and the Debtor's post-petition marketing efforts confirm that belief. The Prior Offer was accepted under the threat of foreclosure. The lenders asserting a junior lien against the Property recorded a notice of default on March 21, 2024, and a notice of sale on June 27, 2024.

### D.　　Liens Against the Property

Attached hereto as **Exhibit 1** is a title report for the Property obtained by the Debtor's broker (the "**Title Report**"). Consistent with the Title Report, the Debtor is aware of three claims secured by the Property. The Debtor is not aware of any other liens against the Property.

### 1.　　Property Taxes

According to the Title Report, a first installment property tax payment of $43,779.98 was due and unpaid as of December 10, 2024, and is subject to a penalty of $4,377.99. The Title Report states that there is an open second installment of $43,779.98 (and a penalty would be due if not paid by April 10, 2025). The Title Report also states that delinquent taxes are owed and, if redeemed by January 2025, the amount that must be paid is $103,618.12. (*See* Ex. 1.) The Debtor reserves its rights and objections with respect to the asserted taxes.

### 2.　　First Note and Deed of Trust

The Property is secured by a senior note and deed of trust (the "**First Mortgage**") in favor of California TD Specialists ("**California TD**") as Trustee, and the following persons as Holders/Beneficiaries/Secured Parties (collectively, the "**First Mortgage Beneficiaries**"): Baroody Joseph Family Living Trust; Steven Kay Living Trust, Steven Kay Trustee; Lisa G. Dungan Family Trust U/A dated 12/28/2005; Benton 777, LLC; Carmelina Avenue LLC; Provident Trust Group FBO Richard Graddis SEP-IRA #3403107; Sheldon Stein Living Trust,

Sheldon Stein, Trustee; Stanley A. Davis; and Peter Andrew Soli.  The note was arranged by Private Money Solutions, Inc. ("**PMS**").

### 3. Second Note and Deed of Trust

The Property is secured by a second note and deed of trust (the "**Second Mortgage**") in favor of California TD as Trustee, and the following persons as Holders/Beneficiaries/Secured Parties (collectively, the "**Second Mortgage Beneficiaries**"): The Juliet Alcasid Family Trust; Igya Demirci; Andrew L. Jones Defined Benefit Plan; Andrew Louis Jones, Trustee of The Groundhog Trust dated Feb 2, 2022 and any Amendments Thereto; and PMS.  The second note was also arranged by PMS.

On December 11, 2024, the Second Mortgage Beneficiaries filed a *Motion for Relief of Automatic Stay* [Docket No. 28] (the "**RFS Motion**").  In support of the RFS Motion, the Second Mortgage Beneficiaries filed a Declaration of Elaine Guralnik [Docket No. 31] stating that the combined indebtedness of the First and Second Mortgages totaled $5,451,149.98 as of the Petition Date, not including possible default interest.  The Second Mortgage Beneficiaries assert that the Property is worth $5,275,000 based on an appraisal by Daniel Poyourow (the "**Appraised Value**").  The Sale Price, alone, demonstrates that the Appraised Value is not accurate.

The First Mortgage Beneficiaries will be paid in full the allowed amount of their claim from the proposed sale of the Property.  The Debtor and the Second Mortgage Beneficiaries have, through their respective counsel, been in communication concerning the marketing of the Property and the proposed sale discussed herein.  Based on those communications, the Debtor understood that the Second Mortgage Beneficiaries would consent to the proposed sale if the commission paid to the Debtor's broker is limited to 4% of the Sale Price.  In addition, the Debtor understands that the Second Mortgage Beneficiaries will continue to pursue the RFS Motion; provided, however, assuming stay relief is granted by the Court, the Second Mortgage Beneficiaries would delay any foreclosure on the Property pending the closing of escrow of the sale of the Property as approved by the Court.  The pleadings recently filed by the Second Mortgage Beneficiaries somewhat reflect the discussions between counsel.  (*See* Limited Obj.

6

[Docket 59] at 2; *see also* Reply [Docket No. 57] at 3-4.)  However, the Second Mortgage Beneficiaries are reserving their asserted rights to object to the proposed sale and to, instead, seek to foreclose.

The Debtor reserves any and all rights and objections with respect to the allowance and amount of the claims asserted against the Property.

## III.    TERMS OF THE PROPOSED SALE

The salient terms of the proposed sale are described below.  A copy of the *California Residential Purchase Agreement and Joint Escrow Instructions*, along with the attachments and addendums (the "**Agreement**"), which fully describe the terms of the sale, is attached hereto as **Exhibit 2**.

1.    **Buyer.**  Estelle Arlene Marco.

2.    **Property to be Sold.**  The Property, *i.e.,* the real property located at 623 N. Rexford Dr., Beverly Hills, California, 90210.

3.    **Sale Price.**  The sale price for the Property is $5,500,000, payable at closing.

4.    **Closing Deadline.**  The closing is to occur within five (5) days after the Court's entry of an order approving the sale.

5.    **"As is" Sale.**  The Buyer is acquiring the Property on an "as is" and "where is" basis without representations, warranties or recourse whatsoever.

6.    **Free and Clear.**  The sale of the Property to Buyer shall be free and clear of any liens pursuant to 11 U.S.C. § 363(f).

7.    **Escrow Fees.**  The Debtor and Buyer are to each pay their own escrow fees.

8.    **Non-Contingent.**  The Buyer has waived loan and appraisal contingencies. The sole contingency to the sale is this Court's approval.

9.    **Court Approval.**  The Agreement is subject to this Court's approval.

10.    **Broker Compensation.**  On December 18, 2024, the Debtor filed its application to employ The Oppenheim Group (the "Broker") as real estate broker regarding the Property [Docket No. 42].  Pursuant to the listing agreement with the Broker, the Broker's

compensation will be 5% of the Sale Price as the Broker represents both the Debtor, subject to the Court's approval, and the Buyer.

## IV.  MEMORANDUM OF POINTS AND AUTHORITIES

### A.  The Debtor May Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b)

Section 363(b) empowers a debtor-in-possession to "use, sell or lease . . . other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. §§ 363(b) & 1107(a). In considering a proposed transaction to use, sell, or lease, courts look at whether the transaction is in the best interests of the estate based on the facts and history of the case. *See In re America West Airlines,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983)).  This requires examination of the "business justification" for the proposed sale. *See In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996); *see also In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991); *In re Ernst Home Center, Inc.,* 209 B.R. 974 (Bankr. W.D. Wash. 1997).

In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, *i.e.,* it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an "arms-length" transaction. *See In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *see also In re 240 North Brand Partners, Ltd.,* 200 B.R. 653 (B.A.P. 9th Cir. 1996).  A bankruptcy court's power to authorize a sale under § 363(b) is reviewed for abuse of discretion. *See In re Walter,* 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988).

Here, the proposed transaction has a legitimate business justification.  The sale of the Property is consistent with the Debtor's overall strategy in this Case to move towards a successful reorganization.  Although the Sale Price is not as high as the Debtor would like and hoped to achieve, the Sale Price reflects the highest price received post-petition and is higher than other prior indications of value, *e.g.*, the Prior Offer and the Second Mortgage Beneficiaries' Appraised Value.  Moreover, the sale provides certainty and will substantially

8

repay the Second Mortgage Beneficiaries' claim (if and to the extent allowed). By minimizing the potential asserted unsecured claim of the Second Mortgage Beneficiaries, the sale provides a better opportunity for recovery for all creditors. The sale also avoids any risk that listing and attempting to sell the Property over a longer period does not result in a greater price on better terms. If the Property is not sold by the Debtor in this Case, then it could be lost to foreclosure at a much lower value, resulting in a larger asserted deficiency claim. Accordingly, the Debtor requests that the Court authorize the sale of the Property and the payment of ordinary costs of sale from the sale proceeds.

**B.**     **The Debtor May Sell the Property Free and Clear of Liens, Claims and Interests**

Section 363(f) provides as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because subsections (1) through (5) of Bankruptcy Code § 363(f) are written in the disjunctive, authority to sell the Property free and clear of any and all interests therein should be granted if any of the conditions are met with respect to each interest holder.

**1.**     **The Debtor Expects the Asserted Secured Parties to Consent Pursuant to § 363(f)(2)**

As discussed above, to the Debtor's knowledge, the only liens asserted against the Property are for property taxes, the First Mortgage, and the Second Mortgage. The Sale Price

9

will satisfy taxes and the First Mortgage. As discussed above, based on the communications between counsel, the Debtor is hopeful that the Second Mortgage Beneficiaries will consent to sale. However, the Second Mortgage Beneficiaries' consent is not required.

### 2. The Sale Free and Clear of Liens is Permissible Pursuant to § 363(f)(1)

Section 363(f)(1) permits a sale free and clear of liens where "applicable nonbankruptcy law permits sale of such property free and clear of such interest[.]" *See* 11 U.S.C. § 363(f)(1).

The Ninth Circuit has stated that the availability of a foreclosure sale under state law satisfies § 363(f)(1). *See Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 900 (9th Cir. 2017) ("Section 363(f)(1) does not require an actual or anticipated foreclosure sale. It is satisfied if such a sale would be legally permissible."). In the *Spanish Peaks* case, the Ninth Circuit held that property may be sold free and clear of leases under § 363(f) and that permitting such did not conflict with § 365 under the facts of that case. *See id.* at 901. Further, the Ninth Circuit held that sale of the property free and clear of the leases pursuant to § 363(f)(1) was proper because, "[u]nder Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent lease on the mortgaged property." *See id.* at 900.

Here, under California law, a foreclosure sale (whether judicial or non-judicial) extinguishes subordinate liens. *See Robin v. Crowell*, 55 Cal. App. 5th 727, 743 (2020) ("After a judicial foreclosure, any liens on the property subordinate to the deed of trust are extinguished. . . ."); *see also* Cal. Civ. Pro. Code § 701.630 (stating that subordinate liens are extinguished); Cal. Code Civ. Proc. § 701.810 (order of distribution of proceeds); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Graves*, 51 Cal. App. 4th 607, 611-12 (1997) (discussing that a "'sold-out junior lienor'" refers to a junior lienholder eliminated by the foreclosure of a senior lien). Accordingly, assuming the Second Mortgage Beneficiaries do not consent, the sale of the Property free and clear of liens (with such liens to attach to the proceeds of the sale) is permissible pursuant to § 363(f)(1).

### 3.      <u>The Sale Free and Clear of Liens is Permissible Pursuant to §</u> <u>363(f)(5)</u>

Section 363(f)(5) permits a sale free and clear of liens where "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest[.]"  *See id.* at § 363(f)(5).

In *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. BAP 2008), the Ninth Circuit Bankruptcy Appellate Panel (the "**BAP**") interpreted § 363(f)(5). The Second Mortgage Beneficiaries cite the *Clear Channel* case for the position that their consent to the proposed sale is required.  (*See* Reply [Docket No. 57] at 2.)  The Second Mortgage Beneficiaries' position is not correct.

In the *Clear Channel* case, the BAP reversed the bankruptcy court's finding that § 363(f)(5) was "applicable whenever a claim or interest can be paid with money."  *In re PW, LLC*, 391 B.R. at 42.  The BAP concluded that § 363(f)(5) requires the bankruptcy court to make a finding of the existence of "a legal or equitable proceeding" in which a court could compel a secured creditor "to release its lien for payment of an amount that [is] less than full value of" such secured creditor's claim.  *See id.* at 45 & 45-46.  The BAP further determined that the availability of cramdown under § 1129(b)(2) was not the sort of proceeding to which § 363(f)(5) was applicable.  Because the bankruptcy court incorrectly interpreted § 363(f)(5) and did not employ the correct legal standard, the BAP remanded the case for further proceedings. *See id.* at 47.  The BAP's decision does not foreclose the sale of property free and clear of liens pursuant to § 363(f)(5) where the price to be paid is less that the debt secured by such property.

Following the *Clear Channel* case, in *In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009), the bankruptcy court approved the sale of overencumbered property over the objection of lienholders that argued that the sale proceeds would not be sufficient to satisfy their claims.  The court analyzed the *Clear Channel* decision and determined that its holding was limited to the issues before the BAP.  *See* 403 B.R. 866 at 868-69.  That is, the parties seeking approval of the sale "did not even argue that there were any qualifying legal or

11

equitable proceedings beyond cramdown under § 1129." *See id.* at 869. No other alternatives were presented to the BAP and, therefore, none were considered. *See id.* As discussed above, in the *Clear Channel* case, the bankruptcy court incorrectly interpreted § 363(f)(5) to not require the identification of a legal or equitable proceeding in which a secured creditor could be compelled to accept money in satisfaction and, for that reason, the BAP remanded.

In contrast to the facts in *Clear Channel,* the bankruptcy court in *Jolan* identified a number of different proceedings under Washington law where a lienholder could be compelled to accept money in less than full payment and still lose its lien, including sales by receivers, a senior secured party's disposition of collateral under the default remedies contained in Washington's version of the Uniform Commercial Code, and a personal property tax sale, among other proceedings. *See id.* at 869-70. As such, the court held that § 363(f)(5) permitted a sale of property free and clear of liens, with the liens attaching to the sale proceeds, even though the proceeds were insufficient to satisfy all of the liens. *See id.* at 870. The decision in *Jolan* has been followed by other bankruptcy courts. *See, e.g.*, *In re Bos. Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (following *Jolan* and stating that "the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5).").

As in Washington, there are legal or equitable proceedings in California through which a lienholder can be compelled to accept money in satisfaction of its lien. One of these is a judicial foreclosure in which any subordinate liens are extinguished. *See Robin v. Crowell*, 55 Cal. App. 5th 727, 743 (2020) ("After a judicial foreclosure, any liens on the property subordinate to the deed of trust are extinguished. . . ."); *see also* Cal. Civ. Pro. Code § 701.630 (stating that subordinate liens are extinguished); Cal. Code Civ. Proc. § 701.810 (order of distribution of proceeds). Another is a nonjudicial foreclosure proceeding by a senior lienholder that eliminates the security interests of junior lienholders. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Graves*, 51 Cal. App. 4th 607, 611-12 (1997). It also appears possible for a receiver to sell property free and clear of liens, with any conflicting liens to attach to the proceeds pending resolution of disputes over the proceeds. *See* Cal Civ. Pro. Code § 568.5

12

1　(providing that a receiver may sell property in its possession in the manner described in the

2　section for levying officers); *see also* Cal. Civ. Pro. Code § 701.830 (providing a mechanism

3　for resolution and payment of conflicting claims to proceeds in a sale by a levying officer and

4　providing that the disputed proceeds should be deposited with the court pending resolution of

5　the conflicting claims).

6　　　　Because there are a number of different legal and equitable proceedings through which

7　a lienholder can be compelled to accept a money satisfaction of its lien, in the event that the

8　Second Mortgage Beneficiaries refuse to consent to the sale, then the Debtor requests that it

9　nonetheless be permitted to sell the Property free and clear of liens, with liens attaching to the

10　proceeds, pursuant to § 363(f)(5).

11　　　**B.**　　**The Buyer of the Property Should Be Deemed a "Good Faith Purchaser"**

12　　　　　　**Pursuant to 11 U.S.C. § 363(m)**

13　Section 363(m) provides:

14　　　　　The reversal or modification on appeal of an authorization under
　　　　　subsection (b) or (c) of this section of a sale or lease of property
15　　　　　does not affect the validity of a sale or lease under such
　　　　　authorization to an entity that purchased or leased such property
16　　　　　in good faith, whether or not such entity knew of the pendency of
　　　　　the appeal, unless such authorization and such sale or lease were
17　　　　　stayed pending appeal.

18　A good faith buyer "is one who buys 'in good faith' and 'for value.'"　*Ewell v. Diebert*

19　*(In re Ewell),* 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies of Pennsylvania,*

20　*Inc.,* 788 F.2d 143, 147 (3d Cir. 1986)).　"[L]ack of good faith is [typically] shown by 'fraud,

21　collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly

22　unfair advantage of other bidders.'"　*Id.* (quoting *Community Thrift & Loan v. Suchy (In re*

23　*Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

24　　　　Here, the Buyer is buying in good faith and for fair value for the Property.　The

25　Agreement to purchase the Property is the product of "arm's-length" discussions between the

26　Debtor and her professionals and the Buyer.　Moreover, the sale will be conducted in a

27　commercially reasonable manner following appropriate notice.　Based on such facts and

28

circumstances, the Debtor believes that this Court can properly determine that the Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

## V.    **CONCLUSION**

Based on the foregoing, the Debtor respectfully requests that the Court enter an order:

1.    Granting the Motion in its entirety;

2.    Authorizing the Debtor to sell the Property to the Buyer, as is, where is, without representations or warranties, free and clear of any and all liens and interests pursuant to 11 U.S.C. § 363(b) and (f);

3.    Approving the terms of the Agreement attached as **Exhibit 2**;

4.    Determining that the Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m);

5.    Authorizing the Debtor to pay ordinary costs of sale of the Property from the proceeds of sale;

6.    Authorizing the Debtor to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreement and consummate the sale of the Property;

7.    Waiving any requirements for lodging periods of the order granting this Motion imposed by Local Bankruptcy Rule 9021-1 and any other applicable bankruptcy rules;

8.    Waiving the stay of the order granting this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules; and

9.    For such other and further relief as the Court deems appropriate.

Dated:  January 2, 2025                **RAINES FELDMAN LITTRELL LLP**

   _/s/ Robert S. Marticello_____
Robert S. Marticello (SBN 244256)
Mark S. Melickian (IL SBN 6229843) (pro hac vice)
David M. Madden (IL SBN 6280517) (pro hac vice)

Proposed Attorneys for Debtors and Debtors in Possession

14

### DECLARATION OF KAMALJIT KAUR KALKAT

I, Kamaljit Kaur Kalkat, declare as follows:

1.      I am one of the two Debtors in the above-captioned cases.  I am the sole member and manager of the other Debtor, Debtor Diamond K, LLC (the "**Debtor**").  I am an individual over 18 years of age and competent to make this Declaration.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.  The facts set forth below are true of my personal knowledge.  I make this Declaration in support of Debtor's *Motion for Order (1) Authorizing Sale of Real Property Located at 623 N. Rexford Dr., Beverly Hills, California, 90210, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C § 363(m); and (3) Authorizing Payment of Ordinary Costs of Sale* ("**Motion**").

2.      All terms not defined herein are used as they are defined in the Motion.

4.      A true and correct copy of the Agreement is attached hereto as **Exhibit 2**.  The Agreement represents the entirety of the Debtor's agreement with the Buyer related to the Property.  The Agreement is the product of "arm's-length" discussions between the Buyer and myself and my professionals.

5.      The Debtor acquired the Property with the intent to improve and sell it.  The Debtor acquired the Property for $7,000,000.  The Debtor made a down payment of $200,000 and the balance of the $7,000,000 purchase price was financed.  It was the Debtor's first acquisition in Beverly Hills and I was informed that there was a competing offer for the Property at $6,800,000.  Due to the Debtor's overall financial distress and unfavorable conditions in the financial and real estate markets following the Debtor's acquisition of the Property, the Debtor was unable to finance the improvement of the Property and resell it for a profit as originally planned.  Additionally, due to a lack of cash flow from the Property and the Debtor's other properties, the Debtor was unable to service the loans secured by such properties.

6.      In an effort to mitigate potential losses, the Debtor shifted its strategy away from improving the Property and instead attempted to sell it as-is.  Pre-petition, the Debtor

listed the Property with Compass for approximately one year ending in May 2024. The listing did not result any actionable offers. The Property was listed by broker Douglas Elliman pursuant to a listing agreement commencing July 11, 2024, and expiring August 11, 2024. That listing resulted in an offer in the amount of $4,800,000 and the Property was under contract at that price prior to the commencement of the Debtor's Chapter 12 case. The Debtor does not believe that the Prior Offer is indicative of the Property's true value and the Debtor's post-petition marketing efforts confirm that belief. The Prior Offer was accepted under the threat of foreclosure and I felt pressure to accept the offer due to the threat of the Debtor losing the Property to foreclosure.

7. The sale of the Property is consistent with the Debtor's overall strategy in this Case to move towards a successful reorganization. Although the Sale Price is not as high as I would like and had hoped to achieve, it reflects the highest price offered post-petition and is higher than other prior indications of value, *e.g.*, the Prior Offer and the Second Mortgage Beneficiaries' Appraised Value. Moreover, the Sale provides certainty and will substantially repay the Second Mortgage Beneficiaries' asserted secured claim if and to the extent allowed. The sale also avoids any risk that listing and attempting to sell the Property over a longer period does not result in a greater price on better terms.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 2, 2025.

DocuSigned by:

_____
AF4C60CED4554F2...
Kamaljit Kaur Kalkat

DEBTOR'S MOTION AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 623 N. REXFORD
10443632.1

## DECLARATION OF ESTELLE ARLENE MARCO

I, Estelle Arlene Marco, declare as follows:

1.       I am the proposed Buyer of the Property as described in the above Motion.  I am an individual over 18 years of age and competent to make this Declaration.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.  The facts set forth below are true of my personal knowledge.  I make this Declaration in support of Debtor's *Motion for Order (1) Authorizing Sale of Real Property Located at 623 N. Rexford Dr., Beverly Hills, California, 90210, Pursuant to 11 U.S.C. § 363(b) and (f); (2) Approving Buyer as Good-Faith Purchaser Pursuant to 11 U.S.C § 363(m); and (3) Authorizing Payment of Ordinary Costs of Sale* ("**Motion**").

2.       All terms not defined herein are used as they are defined in the Motion.

3.       A true and correct copy of the Agreement is attached hereto as **Exhibit 2**.  The Agreement represents the entirety of the Debtor's agreement with me related to the Property.  The Agreement is the product of "arm's-length" discussions between the Debtor and her professionals and myself.

4.       I am buying in good faith and have offered to pay fair value for the Property.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 2, 2025.

Signed by:

*Estelle Arlene Marco*

Estelle Arlene Marco

DEBTORS' MOTION AUTHORIZING SALE OF REAL PROPERTY LOCATED AT 623 N. REXFORD
10443542.1

EXHIBIT "1"



Order No. 150-2423335-06

**Orange Coast Title Company**

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

| | **PRELIMINARY REPORT** | |
|---|---|---|

Raines Feldman Littrell LLP
3200 Park Center Drive Suite 250
Costa Mesa, CA 92626

| **Attention:** | Robert S. Marticello | **Your no.:** | Rexford |
|---|---|---|---|
| **Property address:** | 623 North Rexford Drive, Beverly Hills, CA 90210 | **Order no.:** | 150-2423335-06 |

**Dated:**          December 12, 2024

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of November 25, 2024 at 7:30 AM

Steve Fernando, Sr. Title Officer
Email: stevef@octitle.com
Ph: 714-822-3211
Fax: 714-822-3349

Order No. 150-2423335-06

**The form of policy of title insurance contemplated by this report is:**

A.L.T.A. Homeowner's Policy (07-01-21) with A.L.T.A. Loan Policy (7-1-21)

**The Policy of Title Insurance, if issued, will be underwritten by:** Real Advantage Title Insurance Company
**NOTE: The premium for a policy of Title Insurance, if issued, will be based on:**

**A liability of    TBD    Subject to any filed rate increases and/or changes in the liability.**

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

Diamond K LLC, a California Limited Liability Company

**The land referred to in this report is situated in the City of Beverly Hills, the County of Los Angeles, State of California, and is described as follows:**

Lot 21 of Block 56 of Beverly Hills, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 22, Pages 22 and 23 of Maps, in the Office of the County Recorder of said County.

Assessor's Parcel Numbers(s): 4344-004-021

Order No. 150-2423335-06

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1   This transaction may be subject to a Federal Regulation. Information necessary to comply with the Federal Regulation must be provided prior to the closing. This transaction will not be insured until this information is submitted, reviewed and found to be complete. The form to submit the required information may be obtained by clicking on this link:

GTO Disclosure Form

2   General and Special taxes for the fiscal year 2024-2025, including any assessments collected with current taxes.
    Total amount          **$87,559.95**
    1st installment       **$43,779.98**, Open
    Penalty               **$4,377.99** (after 12/10/2024)
    2nd installment       **$43,779.97**, Open
    Penalty               **$4,387.99** (after 04/10/2025)
    Code area             02410- City of Beverly Hills- 10
    Parcel No.            **4344-004-021**
    Exemption             $None Shown

3   NOTE:  DEFAULTED TAX shown below:

    Delinquent Tax Year(s) and Installment(s): 2023/Both
    Total Amount to redeem if paid by:
                          Dec 2024, $102,328.58
                          Jan 2025, $103,618.12
                          Feb 2025, $104,907.66

    Please Note: High Liability Sale- Examination of County Records Required

4   The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the State of California

5   Covenants, conditions and restrictions in an instrument recorded 06/28/1922, in Book 1218 Page(s) 164 Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or Deed of Trust made in good faith and for value, but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identify, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

    "NOTE: Section 12956.1 (b)(1) of California Government Code provide the following: if this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status."

    An instrument declaring a modification thereof was recorded 10/4/1923 in Book 2642 Page(s) 329, Official Records

Order No. 150-2423335-06

6     A Deed of Trust to secure the indebtedness of

| | |
|---|---|
| Amount: | **$3,500,000.00** |
| Trustor: | **Diamond K LLC, a California Limited Liability Company** |
| Trustee: | California TD Specialists |
| Beneficiary: | Baroody Joseph Family Living Trust, Michael Joseph Trustee ($1,000,000.00), Steven Kay Living Trust, Steven Kay Trustee ($600,000.00), Lisa G. Dungan Family Trust U/A dated 12/28/2005, Lisa G Dungan Trustee ($200,000.00), Benton 777, LLC ($100,000.00), Carmelina Avenue LLC ($200,000.00); Provident Trust Group FBO Richard Graddis SEP-IRA #3403107 ($250,000.00), Sheldon Stein Living Trust, Sheldon Stein Trustee ($500,000.00), Stanley A. Davis ($450,000.00), Peter Andrew Soli ($200,000.00) |
| Dated: | 11/19/2021 |
| Recorded: | **12/2/2021 as Instrument No. 2021-1784726** of Official Records |

To avoid delays at the time of closing, please submit the following to this office, at least one week prior to close of escrow.

a. If this deed of trust is to be eliminated in the policy or policies contemplated by this report/commitment, the Company will require the following for review prior to the recordation of any documents or the issuance of any policy of title insurance:

    i.   Original note and deed of trust.
    ii.   Payoff demand statement signed by all present beneficiaries.
    iii.   Request for reconveyance or substitution of trustee and full reconveyance must be signed by all present beneficiaries and must be notarized by a Orange Coast Title Approved Notary.

b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will also require a full copy of the loan servicing agreement executed by all present beneficiaries.

c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will require a certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.

The beneficial interest under said Deed of Trust was assigned

| | |
|---|---|
| To: | Rebecca Nourmand and assigns and transfers $680,000.00 of it's beneficial interest to DIS, LLC |
| By Assignment Recorded: | 6/29/2023, **as Instrument No. 2023-426162**, Official Records. |

7     A Deed of Trust to secure the indebtedness of

| | |
|---|---|
| Amount: | **$1,400,000.00** |
| Trustor: | **Diamond K LLC, a California Limited Liability Company** |
| Trustee: | California TD Specialists |
| Beneficiary: | The Juliet Alcasid Family Trust ($200,000.00), lgya Demirci ($500,000.00), Andrew L Jones Defined Benefit Plan ($171,000.00), Andrew Louis Jones, Trustee of The Groundhog Trust dtd Feb 2, 2022 and any Amendments Thereto ($329,000.00) and Private Money Solutions, Inc. ($200,000.00) |
| Dated: | 10/26/2022 |
| Recorded: | **11/1/2022 as Instrument No. 2022-1036119** of Official Records |

If the above deed of trust is an Equity Line/Line of Credit, prior to close we will require the following:

(a) Evidence that the line of credit has been frozen and no advances have been made after the issuance of the demand for payoff; and.

(b) any remaining checks, passbooks, or credit cards issued in conjunction with the line of credit be surrendered

The above Deed of Trust is reflected as an equity line loan. Prior to final payoff we will require a written statement (enclosed), with original signatures, from the borrower/owner and beneficiary, stating the account has been frozen and the maker of the loan has requested the line of credit to be closed; or a full reconveyance must be submitted for recording concurrent with payoff.

Order No. 150-2423335-06

To avoid delays at the time of closing, please submit the following to this office, at least one week prior to close of escrow.

a.  If this deed of trust is to be eliminated in the policy or policies contemplated by this report/commitment, the Company will require the following for review prior to the recordation of any documents or the issuance of any policy of title insurance:
    i.    Original note and deed of trust.
    ii.   Payoff demand statement signed by all present beneficiaries.
    iii.  Request for reonveyance or substitution of trustee and full reconveyance must be signed by all present beneficiaries and must be notarized by a Orange Coast Title Approved Notary.

b.  If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will also require a full copy of the loan servicing agreement executed by all present beneficiaries.

c.  If any of the beneficial interest is presently held by trustees under a trust agreement, we will require a certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.

Notice of default under the terms of said Deed of Trust was
Recorded:              3/21/2024 as Instrument No. 2024-185405, Official Records.

A notice of trustee's sale under the terms of said Deed of Trust was recorded: 6/27/2024 as Instrument No. 2024-419015, Official Records.
Trustee:              California TD Specialists
Date of sale:        07/24/2024

8    "The right of the vestee named in Schedule A, or his/her predecessors in interest, to cancel, avoid or rescind any deed or mortgage recorded subsequent to the Notice of Default recorded 03/21/2024, as Instrument No. 2024-185405, Official Records based on California Civil Code Sections 1695 et seq., or 2945 et seq."

9    Any easement or lesser right, for the purposes herein stated, including incidental purposes, disclosed by a survey, inspection, or inquiry
For:              pole line
Affects:         over the rear 3 feet of said land.

10    Rights of parties in possession of said land by reason of unrecorded leases, if any.  Please forward said leases for our examination.

11    Any facts, rights, interest or claims which may be shown by an inspection of the land or which may be disclosed by inquiry of persons in possession of said land.

12    The requirement that we be provided:

(1) A copy of the filed articles of organization of Diamond K LLC, a California Limited Liability Company, a limited liability company.

(2) A current list of the names of said limited liability company members.

(3) A copy of said limited liability company's operating agreement, with a verified certificate that the operating agreement is a true and correct copy of the agreement now in effect.

Note:  This company will require certification by the proper manager(s) or if none, by one of the current members of Kamal Kalkat that the operating agreement and amendments thereto, if any, is currently in full force and effect and has not been revoked or terminated

13    The effect of documents, proceedings, liens, decrees or other matters which do not specifically describe said land, but which, if any do exist, may affect the title or impose liens or encumbrances thereon.  The name search necessary to ascertain the existence of such matters has not been completed and will require a statement of information from all parties involved in this transaction.

Order No. 150-2423335-06

14    **Please note that all transactions involving a hard money or a private party loan will require underwriting approval prior to closing. Please forward all closing documents as soon as possible. Orange Coast Title will also require the following:**

1.  Lender will need to confirm how borrower(s) were vetted and that they have met the borrower(s) in person.
2.  We will require copies of two forms of identification from all individuals executing the loan documents.
3.  All closing documents must be executed in escrow or in the presence of an Orange Coast Title employee or a Notary approved by Orange Coast Title AND an "Identity Verification and Notary Certification" must be filled out by the Notary involved in the signing (Form will be provided by Orange Coast Title). We will require that the notary collect on Orange Coast Title's behalf, 2 forms of identification and provide a copy of the notary ledger with the thumbprint. ANY DOCUMENTS NOTARIZED BY A NON-ORANGE COAST APPROVED NOTARY WILL NOT BE INSURED.
4.  A Standard Policy be issued and standard pricing will apply.

**PLEASE NOTE THAT THE FOLLOWING EXCEPTION WILL APPEAR IN ALL LOAN POLICIES INVOLVING A "HARD MONEY" OR "PRIVATE MONEY" LENDER:**

"Any impairment, loss or failure of title to the beneficial interest of the insured in the mortgage insured by this policy resulting from:

(a)  lack of possession on the original promissory note secured by the insured mortgage, or
(b)  the absence from the original promissory note of a proper endorsement to the insured assignee.
(c)  any claim, allegation or determination that the beneficial interest insured herein, or the underlying transaction involves the sale of a Security and/or is in violation of State or Federal Security Laws.
(d)  any interest or claim of interest by the mortgage company, servicing agent, or broker under the Insured Mortgage or Indebtedness."

15    (A) (a)Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

(B) Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

(C) Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

(D) Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

(E) (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

(F) Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

(G) Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

**Exceptions A-G will be omitted on extended coverage policies.**

**End of Schedule B**

Order No. 150-2423335-06

## "NOTES AND REQUIREMENTS SECTION"

**NOTE NO. 1**

California Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the various provisions of the law as therein contained.

**NOTE NO. 2 PAYOFF INFORMATION:**

Note: this company does require current beneficiary demands prior to closing.
If the demand is expired and a correct demand cannot be obtained, our requirements will be as follows:

A.      If this company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. The amount of this hold will be over and above the verbal hold the lender may have stipulated.

B.      If this company cannot obtain a verbal update on the demand, will either pay off the expired demand or wait for the amended demand, at the discretion of the escrow.

C.      In the event that a payoff is being made to a servicing agent for the beneficiary, this company will require a complete copy of the servicing agreement prior to close.

**NOTE NO. 3**

If this company is requested to disburse funds in connection with this transaction, chapter 598, statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold is one business day after the day deposited. Other checks require a hold period from three to seven business days after the day deposited.

### Notice Regarding Your Deposit of Funds

California Insurance Code Sections 12413 *et. Seq.* Regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow and sub-escrow accounts and be available for withdrawal prior to disbursement. Funds deposited with the Company by wire transfer may be disbursed upon receipt. Funds deposited with the Company via cashier's checks drawn on a California based bank may be disbursed the next business day after the day of deposit. If funds are deposited with by other methods, recording or disbursement may be delayed. All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow accounts of the Company in a financial institution selected by the Company. The Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and the Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by the Company and/or its parent Company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the Company and/or its parent company and earnings on investments made on the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the Company for its services in connection with the escrow or sub-escrow.  If funds are to be deposited with **Orange Coast Title Company** by wire transfer, they should be wired to the following bank/account:

Wiring Instructions for This Office:

**Citizens Business Bank**
**301 Vanderbilt Way**
**San Bernardino, CA 92408**
**Account No. 245123027**
**ABA 122234149**
**Account name:  Orange Coast Title Company**
**Reference Order No.150-2423335-06**
**Steve Fernando, Title Officer**

**Note No. 4:**  The premium for the requested title work shall be split between the agent and underwriter 88%-12%.

Order No. 150-2423335-06



# Orange Coast Title Company

1551 N. Tustin Ave., Suite 840
Santa Ana, CA 92705
714-822-3211

Lender Follow
TBD
Anaheim, CA 92801


**Attention:**          **.Loan Processor**
**Borrower:**


**Lenders supplemental report**


The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an A.L.T.A. Homeowner's Policy (07-01-21) with A.L.T.A. Loan Policy (7-1-21) form as follows:

A.    This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance. This report discloses nothing, which would preclude the issuance of said American Land Title Association loan policy of title insurance with endorsement no. 100 attached thereto.

B.    The improvements on said land are designated as:

A single family residence

623 North Rexford Drive, in the City of Beverly Hills, County of Los Angeles, State of California.

C.    Our search of the public records revealed conveyance(s) affecting said land recorded within 24 months of the date of this report are as follows:

None.

# Attention

Please note that this preliminary report now has an extra copy of the legal description on a separate sheet of paper. There are no markings on the page. The idea is to provide you with a legal description that can be attached to other documents as needed. That legal description page immediately follows this page.

Thank you for your support of **Orange Coast Title Company**. We hope that this makes your job a little easier.

Order No. 150-2423335-06

**Exhibit "A"**

Lot 21 of Block 56 of Beverly Hills, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 22, Pages 22 and 23 of Maps, in the Office of the County Recorder of said County.

Order No. 150-2423335-06

# CLTA Preliminary Report Form – Exhibit B (06-03-11)

### CLTA STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02/03/10)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning: a. building, b. zoning, c.land use d. improvements on the Land, e.land division; and ,f. environmental protection. This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks: a. that are created, allowed, or agreed to by You, whether or not they recorded in the Public Records; b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date; c. that result in no loss to You; or d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27, or 28.
5. Failure to pay value for Your Title.
6. Lack of a right: a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and b. in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

---
### LIMITATIONS ON COVERED RISKS
Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits of liability are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| **Covered Risk 16:** | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 10,000 |
| **Covered Risk 18:** | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| **Covered Risk 19:** | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| **Covered Risk 21:** | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 5,000 |

---

### ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: * land use * improvements on the land * land division * environmental protection. This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date. This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless: * a notice of exercising the right appears in the public records *on the Policy Date * the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks: *that are created, allowed, or agreed to by you *that are known to you, but not to us, on the Policy Date - unless they appeared in the public records *that result in no loss to you *that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4. Failure to pay value for your title.
5. Lack of a right: *to any land outside the area specifically described and referred to in Item 3 of Schedule A OR *in streets, alleys, or waterways that touch your land. This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

### 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:(a)created, suffered, assumed or agreed to by the Insured Claimant; (b)not known to the Company, not recorded in the public records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14);or(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state in which the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b):

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:
1.(a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.Any facts, rights, interests or claims which are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.(a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

Order No. 150-2423335-06

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to: (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or (IV) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5. (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is (a) a fraudulent conveyance or fraudulent transfer; or (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of the land; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14, and 16.(b) Any governmental police power. This Exclusion 1(b)does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(b), 14, and 16.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant;(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks  11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 26); or (e)resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth in lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no

longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6..

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

Order No. 150-2423335-06

# Orange Coast Title Company
## PRIVACY POLICY

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).

- Information about your transactions with us, our Affiliated Companies, or others; and

- Information we receive from a consumer reporting agency.

### Your California Rights (immediately following this Privacy Policy) or you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. Only applies to CA residents

### Use of Information

We request information from you for our own legitimate business purposes and not for benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

### Former Customers

### Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Other Important Information

We reserve the right to modify or supplement this Privacy Policy at any time. If our Privacy Policy changes, we will provide the new Privacy Policy before the new policy becomes effective.

Last Revision 12/26/2019
Effective on 1/01/2020

## Your California Rights

*If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act ("CCPA"). All phrases used herein shall have the same meaning as those phrases used under relevant California law, including but not limited to the CCPA.*

**Right to Know**
You have the right to know:

- The categories of personal information we have collected about or from you;

- The categories of sources from which we collected your personal information;

- The business or commercial purpose for collecting or sharing your personal information;

- The categories of third parties with whom we have shared your personal information; and

- The specific pieces of your personal information we have collected.

*Process to Submit a Request.* To submit a verified request for this information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by visiting our website https://www.titleadvantage.com/privacypolicy.htm or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure your personal information is not disclosed to unauthorized parties, and to protect against fraud, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right of Deletion**
You have a right to request that we delete the **personal information** we have collected from or about you.

*Process to Submit a Request.* To submit a verified request to delete you information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by clicking here or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle.com.

*Verification Method.* In order to ensure we do not inadvertently delete your **personal information** based on a fraudulent request, we will verify your identity before we respond to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the **personal information** requested to be deleted, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**
We do not sell your **personal information** to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**
You have a right to exercise your rights under the CCPA without suffering discrimination. Accordingly, OC Title & family of Companies will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**California Minors**
If you are a California resident under the age of 18, California Business and Professions Code § 22581 permits you to request and obtain removal of content or information you have publicly posted on any of our Applications or Websites. To make such a request, please send an email with a detailed description of the specific content or information to dataprivacy@octitle.com. Please be aware that such a request does not ensure complete or comprehensive removal of the content or information you have posted and there may be circumstances in which the law does not require or allow removal even if requested.

**Collection Notice**
The following is a list of the categories of **personal information** we may have collected about California residents in the twelve months preceding the date this Privacy Notice was last updated, including the business or commercial purpose for said collection, the

Order No. 150-2423335-06

categories of sources from which we may have collected the **personal information**, and the categories of third parties with whom we may have shared the **personal information**:

## Categories of Personal Information Collected

The categories of **personal information** we have collected include, but may not be limited to:

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law
- address

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number
- employment history

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

## Categories of Sources

Categories of sources from which we've collected **personal information** include, but may not be limited to:

- the consumer directly
- public records
- governmental entities
- non-affiliated third parties
- affiliated third parties

## Business Purpose for Collection

The business purposes for which we've collected **personal information** include, but may not be limited to:

- completing a transaction for our Products
- verifying eligibility for employment
- facilitating employment
- performing services on behalf of affiliated and non-affiliated third parties
- protecting against malicious, deceptive, fraudulent, or illegal activity

## Categories of Third Parties Shared

The categories of third parties with whom we've shared **personal information** include, but may not be limited to:

- service providers
- government entities

- operating systems and platforms

- non-affiliated third parties
- affiliated third parties

**Sale Notice**

We have not sold the **personal information** of California residents to any third party in the twelve months preceding the date this Privacy Notice was last updated, and we have no plans to sell such information in the future. We also do not, and will not sell the **personal information** of minors under sixteen years of age without affirmative authorization.

**Disclosure Notice**

The following is a list of the categories of **personal information** of California residents we may have disclosed for a business purpose in the twelve months preceding the date this Privacy Notice was last updated.

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number

- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

Order No. 150-2423335-06

- address
- employment history

If you have any questions and/or comments you may contact us:

**Call Us** at our toll free number (866) 241-7373

**Email Us** at dataprivacy@octitle.com

Mail:

Orange Coast Title

Attn: Privacy Officer

1551 N. Tustin Ave., Ste. 300

Santa Ana, CA 92705

Effective on 1/1/2019

Revised on 12/23/2019

Order No. 150-2423335-06



# Orange Coast Title Company
### 1551 N. Tustin Ave., Suite 840
### Santa Ana, CA 92705
### 714-822-3211

### **OWNER'S AFFIDAVIT**

State of _____  
County of _____  } S.S.　　　　　Order No.:  150-2423335-06

The undersigned, _____, (owner's name) being first duly sworn, depose and say as follows:

1.    That the undersigned is/are the owner(s) of certain real property situated in the City of Beverly Hills, County of Los Angeles and State of California, commonly known as 623 North Rexford Drive and more particularly described in Schedule "A" attached hereto (the "Property"):

2.    That within the last ninety (90) days, including the date hereof, no person, firm or corporation has furnished any labor, services or materials in connection with the construction or repair of any buildings, fixtures or improvements on the Property, EXCEPT (if work has been performed or materials furnished within the last (90) days, please explain fully and state whether payment for the same has been made in full); if None, please enter "None": _____.

3.    That there are no present tenants, lessees or other parties in possession or who have a right to possession of said Property, EXCEPT: (if none, state "None") _____.

4.    That the undersigned has/have no knowledge of any taxes or special assessments which are not shown as existing liens by the public records other than as follows: _____.

5.    That the taxes for Installment ___ of fiscal year _____ are paid.  Installment ___ of fiscal year _____ is not yet due.

6.    That the undersigned has/have no knowledge of, nor has/have the undersigned created, any violations of any covenants, restrictions, agreements, conditions or zoning ordinances affecting the Property.

7.    That Property is free of all liens, taxes, encumbrances and  claims of every kind, nature and description whatsoever, except for the following mortgages or deeds of trust; _____ and except for real estate and personal property taxes for Installment ___ of fiscal year _____ and subsequent years.

8.    That there are no mechanic's, materialmen's or laborer's liens against the above described Property, nor is any party entitled to assert any mechanic's, materialmen's or laborer's liens against the Property.

9.    That there are no unrecorded leases or agreements affecting the Property, other than the Agreement of Sale between the undersigned and _____ as purchasers of the Property dated _____.

10.    That there are no open, unexercised options to purchase or rights of first refusal to purchase the Property.

11.    That no judgment or decree has been entered in any court of this State or the United States against the undersigned and which remain unsatisfied, EXCEPT _____.

12.    The undersigned further state(s) that he/she/they are each familiar with the nature of an oath; and with the penalties under the laws of the state for making false statements in any instruments of this nature.  The undersigned further certify(ies) that they have read, this affidavit, or have had it read to them, and understand its context.

13.    That I/WE have made this Affidavit for the purpose of inducing Orange Coast Title Company to issue one or more policy(ies) of title insurance insuring interests in the Property, and that said title company is relying on the statements set forth in this Affidavit in issuing said policies, free and harmless from and against any and all actions, causes, of action, loss, cost, expense, or damages that may be brought against or suffered or incurred by Orange Coast Title Company or its underwriters, in relying

Order No. 150-2423335-06

on the truth and accuracy of the statements contained herein.

By: _____
Name: _____

By: _____
Name: _____

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

State of _____  } S.S.
County of _____

On _____, before me, _____,

personally appeared _____

_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND and OFFICIAL SEAL

Signature: _____

(Notary Seal)

**Exhibit "A"**

Lot 21 of Block 56 of Beverly Hills, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 22, Pages 22 and 23 of Maps, in the Office of the County Recorder of said County.

Order No. 150-2423335-06



# Orange Coast Title Company
### 1551 N. Tustin Ave., Suite 840
### Santa Ana, CA 92705
### 714-822-3211

## <u>DECLARATION OF OCCUPANCY</u>
### (Loan Transaction)

The undersigned, _____,
(owner's name) depose(s) and say(s) as follows:

1.    The undersigned is/are the owner(s) of certain real property situated in the City of Beverly Hills, County of Los Angeles and State of California, commonly known as 623 North Rexford Drive, herein referred to as "Property":

2.    The undersigned is/are obtaining a loan from _____ to be secured by a Deed of Trust against the Property, which is the subject of this transaction.

3.    The undersigned currently occupy the Property as the undersigned's principal address, and intend to continue to occupy the same as the undersigned's principal residence following the close of this transaction.

4.    The undersigned understand(s) that Orange Coast Title Company is relying on this information in calculating the recording fees for all real estate instruments, papers, and notices recorded in connection with this transaction in accordance with *California Government Code §27388.1(a)(2)*.

5.    The undersigned agree(s) to indemnify and hold Orange Coast Title Company harmless from and against, and to pay any additional recording fees and/or penalties arising out of, or in connection with, the inaccuracy of the information set forth herein.

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on _____, at _____, _____.


By:   _____      By:   _____
Name: _____      Name: _____

Order No. 150-2423335-06

# STATEMENT OF FACTS

**CONFIDENTIAL INFORMATION FOR YOUR PROTECTION**

This statement is to be signed personally by each party to the transaction and by both husband and wife, or domestic partner before title insurance can be written. When filled in completely it will serve to establish identity, eliminate matters affecting persons of similar name, protect you against forgeries, and speed the completion of your transaction.

**MY FULL NAME**   (First, Middle, Last)_____ Date of Birth :_____

Business Ph: _____ Home Ph: _____ Birthplace: _____

SS# _____ Driver's License No._____ Expiration Date _____ State Issued_____

I have lived continuously in the USA since: _____

Full name of spouse/domestic partner: (First, Middle, Last)_____ - _____

Spouse/domestic partner's Birthplace: _____ Date of Birth: _____

Spouse/domestic partner's SS# _____ I have lived continuously in the USA since: _____

We were married/legally joined on : _____ at _____

Spouse/domestic partner's maiden name: _____

---

**RESIDENCES & OCCUPATIONS DURING PAST 10 YEARS**

Street_____ City_____ From_____ to_____
Street_____ City_____ From_____ to_____
Street_____ City_____ From_____ to_____

**OCCUPATIONS**

(Husband/Domestic partner)   Firm Name: _____ Location: _____
                             Firm Name: _____ Location: _____
                             Firm Name: _____ Location: _____
(Wife/Domestic partner)      Firm Name: _____ Location: _____
                             Firm Name: _____ Location: _____

---

**Any Former**   (If no former marriage/union, write "none" Otherwise complete the following)

Name of former wife/domestic partner: _____

**Marriages**   Deceased: _____ Divorced: _____ Interlocutory: _____ Final: _____ When: _____ Where: _____

(check one item -   Name of former husband/domestic partner: _____

fill in date & place)   Deceased: _____ Divorced: _____ Interlocutory: _____ Final: _____ When: _____ Where: _____

---

There are no leases, defects, encumbrances, adverse claims, or other matters affecting said property other than as

Shown on the Preliminary Report prepared by: _____

Bearing the above referenced order number dated: _____

There is no-one in possession or entitled to possession of said property other than the Vestee shown in said

Preliminary Report except: _____

There is no work of improvement in progress and no such work has been completed within one year of this date:

(Circle One)               YES                          NO

---

The Street address of the property in this transaction is:_____

Single Family Residence: _____ Multiple Residence: _____ Commercial: _____ Vacant Land: _____

Occupied By:  Owner: _____ Lessee: _____ Tenants: _____

Is any portion of new loan funds to be used for construction?  (circle one)      YES                    NO

*The subject of this Statement of Identity, assumes full responsibility for any and all discrepancies, and agrees to hold harmless the recipient herein from any losses sustained by relying on such information.*

Date: _____          _____
                                                          (Signature)

Order No: _____150-2423335-06          _____
                                                          (Signature)

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY
IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT COMPLY
WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

Filed 01/02/25

Doc 66



BEVERLY HILLS
M.B. 11-186-187

BEVERLY HILLS
M.B. 22-22-23

CODE
2410

BLK. 56

BLK. 56

EXHIBIT "2"

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

**Filed 01/02/25**    **Case 24-25181**                               **Doc 66**

**THE OPPENHEIM GROUP**

CALIFORNIA ASSOCIATION OF REALTORS®

## SELLER COUNTER OFFER No. _1_
**May not be used as a multiple counter offer.**
(C.A.R. Form SCO, Revised 12/24)

Date _12/26/2024_

This is a counter offer to the Purchase Agreement, OR ☐ Buyer Counter Offer No.____, ☐ Other _____ ("Offer"),
dated _12/26/2024_ , on property known as _____ **623 N Rexford Dr, Beverly Hills, CA 90210** _____ ("Property"),
between _____ **Estelle Arlene Marco** _____ ("Buyer")
and _____ **Diamond K LLC** _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless specifically referenced for inclusion in **paragraph 1D** of this or another Counter Offer or an addendum.
   B. Unless Otherwise Agreed or altered in another Counter Offer, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but the dollar amount of any initial and increased deposit and Seller credits shall remain unchanged from the original Offer.
   C. Unless Otherwise Agreed or altered in another Counter Offer, if in the original offer (such as **paragraph 3L(2)** of the RPA) the appraisal contingency amount is lower than the original offered price, then the dollar amount of any difference ("Appraisal Gap") shall remain unchanged and be deducted from the final contract price to create the final appraisal contingency amount. (For example, if the purchase price in the offer is $1,000,000, and Buyer reduces the appraisal contingency value to $950,000, the "Appraisal Gap" is $50,000. If the purchase price is increased to $1,200,000 as a result of this counter offer, the appraisal contingency value shall be adjusted to $1,150,000 ($1,200,000 less $50,000). If the property appraises below $1,150,000, Buyer may exercise the appraisal contingency right to cancel this Agreement.)
   D. **OTHER TERMS:** _- See Addendum No. 1_
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   E. The following attached documents are incorporated into this Seller Counter Offer when Signed and Delivered by both Parties (if both parties do not Sign and Deliver all attached addenda, then any acceptance of this Seller Counter Offer is not valid):
   ☐ Addendum No. _____ (C.A.R. Form ADM)
   ☐ Back Up Offer Addendum (C.A.R. Form BUO)
   ☐ Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
   ☐ Seller Purchase of Replacement Property (C.A.R. Form SPRP)
   ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA)
   ☐ Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
   ☐ Other _____ ☐ Other _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Seller Counter Offer is signed in **paragraph 4** (if more than one signature then, the last signature date)(or by _____ ☐ AM/☐ PM on _____ (date)) **(i)** it is Signed in **paragraph 5** by Buyer and **(ii)** a copy of the Signed Seller Counter Offer is Delivered to Seller or Seller's Authorized Agent.
   B. OR If Seller withdraws this Seller Counter Offer anytime prior to Buyer's Acceptance by communicating withdrawal to Buyer or Buyer's Agent (C.A.R. Form WOO may be used).
   C. OR If Seller accepts another offer prior to Buyer's Acceptance of this Seller Counter Offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in **2A** and **5**. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED. THIS COUNTER OFFER IS VALID REGARDLESS OF WHETHER ANY PREVIOUS OFFER OR COUNTER OFFER EXPIRED BY ITS TERMS.** The terms and conditions of those documents are incorporated into this Seller Counter Offer unless Otherwise Agreed.

Seller _____ **Diamond K LLC** Date 12/26/2024
            DocuSigned by:
Seller _____ Date _____
          AF4C60CED4554F2...

**SCO Revised 12/24 (PAGE 1 OF 2)**



## SELLER COUNTER OFFER (SCO PAGE 1 OF 2)

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Filed 01/02/25     Case 24-25181     Doc 66

5. **ACCEPTANCE: I/WE** accept the above Seller Counter Offer **(If checked** ☐ **SUBJECT TO THE ATTACHED BUYER COUNTER OFFER No.** )and acknowledge receipt of a Copy.

Buyer _Estelle Arlene Marco_      *Estelle Arlene Marco* Date 12/26/2024

Buyer 27D7542F0FAD440...      Date _____

6. **LATE ACCEPTANCE:** If the date of Buyer's signature in **paragraph 5** is after the expiration specified in **paragraph 2A**, Buyer's acceptance is only binding if Seller agrees to the late acceptance by signing below before 5:00 PM on the third Day after the date this Seller Counter Offer is signed in **paragraph 5**.

     I/We (Seller), ratify the acceptance and agree to all terms of this Seller Counter Offer.

Seller _____ *Diamond K LLC* Date _____

Seller _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**SCO Revised 12/24 (PAGE 2 OF 2)**



**SELLER COUNTER OFFER (SCO PAGE 2 OF 2)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Filed 01/02/25   Case 24-25181   Doc 66

THE
OPPENHEIM
GROUP

# CALIFORNIA ASSOCIATION OF REALTORS®

# ADDENDUM No. _1_
**(C.A.R. Form ADM, Revised 12/21)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____December 26, 2024_____ , on property known as _____623 N Rexford Dr_____
_____Beverly Hills, CA 90210_____ ("Property/Premises"),
in which _____Estelle Arlene Marco_____ is referred to as ("Buyer/Tenant")
and _____Diamond K LLC_____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*1. Escrow to close 5 days from court approval.*
*2. Initial Deposit to be 3% of Purchase Price and is to be immediately delivered to escrow within one business day of acceptance. Initial Deposit is nonrefundable unless court does not approve deal.*
*3. Escrow and Title: The escrow company shall be A&A Escrow Services, Inc., attention Antonia Delgado, and the title company shall be Orange Coast Title Company.*
*4. Bankruptcy Court Approval: The sale is expressly subject to Bankruptcy Court approval in the Bankruptcy Case. Buyer shall close the sale by no later  The Debtor will file a motion to approve the sale with the Bankruptcy Court pursuant to § 363 of the United States Bankruptcy Code (11 U.S.C. § 363). As part of such motion, Debtor will request a finding of Buyer's "good faith" in accordance with § 363(m) of the Bankruptcy Code and that the sale be free and clear of liens as permitted pursuant to § 363(f) of the Bankruptcy Code.*
*5. Property Sold "As is" "Where is":  Debtor is selling the Property in an "AS IS", where is condition or basis by quitclaim deed, with all faults, and without any representations, recourse, or warranties whatsoever, implied or express, including, without limitation, representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with state, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvements on the Property, nor any assurances regarding the sub-divisibility of the Property.  If any state or local ordinance laws require that the Property be brought into compliance, Buyer, at his sole expense, shall comply with and pay for any such requirements.*
*6. Liens, Claims, Encumbrances and Interests: The sale shall be free and clear of liens as permitted by § 363 of the Bankruptcy Code*
*7. Non-Refundability and Forfeiture of Deposit:  The entirety of the Deposit is absolutely non- refundable and forfeited to Debtor's bankruptcy estate, unless the Bankruptcy Court enters an order that denies the Debtor's request to sell the Property to Buyer. If Buyer fails to close the sale by the Closing Date, then the Debtor shall be entitled to retain the entirety of the Deposit as liquidated damages.*
*8. Bankruptcy Court Jurisdiction: The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Counteroffer and the Agreement.  This Counteroffer and the Agreement shall be construed pursuant to the laws of the State of California, except to the extent preempted by applicable Federal bankruptcy law.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant  _Estelle Arlene Marco_  (signed)  Date _12/26/2024_
*Estelle Arlene Marco*

Buyer/Tenant  _____  Date _____

Seller/Landlord  _(signed)_  Date _12/26/2024_
*Diamond K LLC*

Seller/Landlord  _____  Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**ADM REVISED 12/21 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96



**DISCLOSURE REGARDING**
**REAL ESTATE AGENCY RELATIONSHIP**
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/24)

THE
OPPENHEIM
GROUP

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| | | |
|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Estelle Arlene Marco_ ⎯Signed by: 27D7642F0FAD440... | _Estelle Arlene Marco_ Date 12/26/2024 | |
| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ | Date _____ | |

Agent    **The Oppenheim Group**        DRE Lic. # **01983697**
              Real Estate Broker (Firm)

By ⎯Docusigned by: _Jason Oppenheim_ **Jason Oppenheim** DRE Lic. # **01863254**    Date 12/26/2024
     348F6AAD6C134C0... (Salesperson or Broker-Associate, if any)

**AD REVISED 12/24 (PAGE 1 OF 2)**



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

CIVIL §§ 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration, (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in § 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in § 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable before execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Seller's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

| | | |
|---|---|---|
| Buyer's Brokerage Firm | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

| | | |
|---|---|---|
| Buyer's Agent | DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.

**2079.21** (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**AD REVISED 12/24 (PAGE 2 OF 2)**



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   623 N Rexford Dr.



CALIFORNIA
ASSOCIATION
OF REALTORS®

THE
OPPENHEIM
GROUP

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/24)

Date Prepared: **December 26, 2024**

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ **Estelle Arlene Marco** _____ ("Buyer").
   B. **THE PROPERTY** to be acquired is _____ **623 N Rexford Dr** _____, situated
   in _____ **Beverly Hills** _____ (City), _____ **Los Angeles** _____ (County), California, _____ **90210** _____ (Zip Code),
   Assessor's Parcel No(s). _____ **4344-004-021** _____ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** _____ **The Oppenheim Group** _____ License Number __ **01983697** __
   Is the broker of (check one): ☐ the Seller; or ☒ both the Buyer and Seller (Dual Agent).
   **Seller's Agent** _____ **Jason Oppenheim** _____ License Number __ **01863254** __
   Is (check one): ☐ the Seller's Agent. (Salesperson or broker associate); or ☒ both the Buyer and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** _____ **The Oppenheim Group** _____ License Number __ **01983697** __
   Is the broker of (check one): ☐ the Buyer; or ☒ both the Buyer and Seller (Dual Agent).
   **Buyer's Agent** _____ **Jason Oppenheim** _____ License Number __ **01863254** __
   Is (check one): ☐ the Buyer's Agent (Salesperson or broker associate); or ☒ both the Buyer and Seller's Agent (Dual Agent).
   C. ☐ More than one Brokerage represents ☐ Seller, ☐ Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | Purchase Price | $ _5,500,000.00_ | ☒ All Cash |
| B | | Close Of Escrow (COE) | ☒ _7_ Days after Acceptance<br>OR on ☐ _____ (date) | |
| C | 33A | Expiration of Offer | 3 calendar days after all Buyer Signature(s)<br>or _____ (date),<br>at 5PM or _____ ☐ AM/ ☐ PM | |
| D(1) | 5A(1) | Initial Deposit Amount | $ _165,000.00_ ( _3.00_ % of purchase price)<br>(% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR ☐ |
| D(2) | 5A(2) | ☐ Increased Deposit | See attached Increased Deposit Addendum (C.A.R. Form IDA) | |
| E(1) | 5C(1) | Loan Amount(s):    First<br>Interest Rate<br>Points<br><br>If FHA or VA checked, Deliver list of lender required repairs | $ _____ ( ____ % of purchase price)<br>Fixed rate or ☐ Initial adjustable rate<br>• not to exceed _____ %<br>• Buyer to pay up to _____ points to obtain the rate above<br><br>17 (or ____) Days after Acceptance | Conventional or, if checked,<br>☐ FHA (Forms FVAC/HID attached)<br>☐ VA (Form FVAC attached)<br>☐ Seller Financing<br>☐ Other: |
| E(2) | 5C(2) | Additional Financed Amount<br>Interest Rate<br>Points | $ _____ ( ____ % of purchase price)<br>Fixed rate or ☐ Initial adjustable rate<br>• not to exceed _____ %<br>• Buyer to pay up to _____ points to obtain rate above | Conventional or, if checked,<br>☐ Seller Financing<br>☐ Other: |
| E(3) | 7A | Occupancy Type | Primary, or if checked, ☐ Secondary ☐ Investment | |
| F | 5D | Balance of Down Payment | $ _5,335,000.00_ | |
| | | PURCHASE PRICE TOTAL | $ _5,500,000.00_ | |

© 2024, California Association of REALTORS®, Inc.

**RPA REVISED 12/24 (PAGE 1 OF 17)**

Buyer's Initials _ElM,_ _____    Seller's Initials _SA,_ _____

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 17)

Jason Oppenheim    Phone: (310)990-6656    Fax:    623 N Rexford Dr.
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Property Address: **623 N Rexford Dr, Beverly Hills, CA 90210**     Date: **December 26, 2024**

| G | SELLER PAYMENT TO COVER BUYER EXPENSES AND COSTS | | |
|---|---|---|---|
| G(1) | 5E | ☐ Seller Credit to Buyer | $ _____   For closing costs |
| G(2) | | ADDITIONAL SELLER CREDIT TERMS (does not include buyer broker compensation): _____ | |
| G(3) | 18A(2), 18A(3) | **Seller Payment for Buyer's Obligation to compensate Buyer's Broker** | ☒ Seller agrees to pay, out of transaction proceeds, **2.500** % of the final purchase price AND, if applicable $ _____ OR, if checked ☐ $ _____ toward the obligation of Buyer to compensate Buyer's Broker. |
| | | **Buyer Compensation Affirmation** | Buyer affirmatively represents that, at the time this offer is made, Buyer has a written agreement with Buyer's Broker that: (i) is valid; (ii) covers the Property; and (iii) provides for compensation for no less than the amount stated above. |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | Intentionally Left Blank | |
| J | 16 | Final Verification of Condition | 5 (or _____) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____) Days after Acceptance | |
| L | CONTINGENCIES | | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency. Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or _____) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property | 17 (or _____) Days after Acceptance | |
| | | Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | | Any contingency in L(1)-L(8) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See paragraph 8I. |
| L(4) | 8D | Insurance | 17 (or _____) Days after Acceptance | |
| L(5) | 8E, 14A | Review of Seller Documents | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 13A | Preliminary ("Title") Report | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 11L | Common Interest Disclosures Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☒ CR-B attached |
| L(8) | 8H, 9B(6) | Review of leased or liened items (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(9) | 8K | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | Possession | | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or ☐ _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | Occupied units by tenants or anyone other than the Seller | ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached | See 7A if TOPA is not attached. |
| N | Documents/Fees/Compliance | | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11L(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 32 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | Intentionally Left Blank | |

**RPA REVISED 12/24 (PAGE 2 OF 17)**    Buyer's Initials _EdM_ ___    Seller's Initials ___ ___




**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 17)**

Property Address: *623 N Rexford Dr, Beverly Hills, CA 90210*     Date: *December 26, 2024*

## P. Items Included and Excluded

| P(1) | 9 | **Items Included** – All items specified in Paragraph 9B are included and the following, if checked: | | |
|---|---|---|---|---|
| | | ☒ Stove(s), oven(s), stove/oven combo(s);<br>☐ Refrigerator(s);<br>☐ Wine Refrigerator(s);<br>☐ Washer(s);<br>☐ Dryer(s);<br>☐ Dishwasher(s);<br>☐ Microwave(s);<br>**Additional Items Included:**<br>☐ _____ | ☐ Video doorbell(s);<br>☐ Security camera equipment;<br>☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;<br>☐ Smart home control devices;<br>☐ Wall mounted brackets for video or audio equipment;<br>☐ _____ | ☐ Above-ground pool(s) / ☐ spa(s);<br>☒ Bathroom mirrors, unless excluded below;<br>☐ Electric car charging systems and stations;<br>☐ Potted trees/shrubs;<br><br>☐ _____ |
| P(2) | | **Excluded Items:**<br>☐ _____ ; | | ☐ _____ |

## Q. Allocation of Costs

| Q | Para # | Item Description | Who Pays (If Both is checked, cost to be split equally unless Otherwise Agreed) | Additional Terms |
|---|---|---|---|---|
| Q(1) | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____<br><br>☒ Provided by: *MyNHD* | ☐ Environmental<br>☐ Other _____ |
| Q(2) | | Optional Wildfire Disclosure Report | ☐ Buyer ☐ Seller ☐ Both _____<br>Provided by: | |
| Q(3) | | (A) _____ Report<br>(B) _____ Report | ☐ Buyer ☐ Seller ☐ Both _____<br>☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale inspections, reports | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(6) | 10B(2) | Government Required Point of Sale corrective/remedial actions | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(7) | 19B | Escrow Fee | ☐ Buyer ☐ Seller ☐ Both _____<br>Escrow Holder: *Seller's Choice* | ☒ Each to pay their own fees |
| Q(8) | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____<br>Title Co. (If different from Escrow Holder): *Seller's Choice* | |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(12) | 11L(2) | HOA fee for preparing disclosures | Seller | |
| Q(13) | | HOA certification fee | Buyer | |
| Q(14) | | HOA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both _____ | |
| Q(16) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(18) | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to:<br>_____<br>_____<br>☒ Buyer waives home warranty plan | ☐ Buyer ☐ Seller ☐ Both _____<br>Issued by: _____ | If Seller or Both checked, Seller's cost not to exceed $ _____. |

| R | **OTHER TERMS:** _____ |
|---|---|
| | _____ |

Buyer's Initials _____ *EdM* _____     Seller's Initials  _____ 

RPA REVISED 12/24 (PAGE 3 OF 17)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     623 N Rexford Dr.

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: *623 N Rexford Dr, Beverly Hills, CA  90210*     Date: **December 26, 2024**

**4.** **PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A.** **PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)   ☐ Other _____

**B.** **OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # _____ (C.A.R. Form ADM)   ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)   ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other _____   ☐ Other _____

**C.** **BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)
- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)   ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)   ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
  - (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)   ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)   ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
- ☐ REO Advisory (C.A.R. Form REO)   ☐ Probate Advisory (C.A.R. Form PA)
- ☐ Other _____   ☐ Other _____

**5.** **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A.** **DEPOSIT:**
   (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
   (2) **RETENTION OF DEPOSIT: Paragraph 26, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

**B.** **ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C.** **LOAN(S):**
   (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1).**
   (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2).**
   (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
   (4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D.** **BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E.** **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6.** **ADDITIONAL FINANCING TERMS:**

**A.** **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B.**

**B.** **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**C.** **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

---

**RPA REVISED 12/24 (PAGE 4 OF 17)**    Buyer's Initials *EdM,* _____    Seller's Initials _____ _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    623 N Rexford Dr.

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: ~~623 N Rexford Dr, Beverly Hills, CA 90210~~     Date: **December 26, 2024**

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
Unless Otherwise Agreed: **(i)** the Property shall be delivered "As-Is" in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**
  **(1)** This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form,** contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**
  **(2)** Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.
  **(3)** Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.
  **(4)** If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
  **(5) NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**
  **(1)** This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form,** contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
  **(2) NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
  **(3)** ☒ Fair Appraisal Act: See **paragraph 29** for additional information.

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property. See **paragraph 12**.

**D. INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**E. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A**.

**RPA REVISED 12/24 (PAGE 5 OF 17)**     Buyer's Initials  _____     Seller's Initials  _____     

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    623 N Rexford

Property Address: **523 N Rexford Dr, Beverly Hills, CA 90210**     Date: **December 26, 2024**

**F. TITLE:**
  (1) This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
  (2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**G. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11L** ("CI Disclosures").

**H. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**I. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**J. REMOVAL OF CONTINGENCY OR CANCELLATION:**
  (1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
  (2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
  (3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**K. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**
  (1) All EXISTING fixtures and fittings that are attached to the Property;
  (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
  **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.
  (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
  (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use a **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
  (5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.
  (6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

**RPA REVISED 12/24 (PAGE 6 OF 17)**     Buyer's Initials  / _____     Seller's Initials  / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    623 N Rexford Dr.

Property Address: 623 N Rexford Dr, Beverly Hills, CA 90210      Date: **December 26, 2024**

  (7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2)**; (ii) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS.**

  **A. INSPECTIONS, REPORTS, TESTS AND CERTIFICATES: Paragraphs 3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, report, test, certificate or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document.** Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as **C.A.R. Forms RR, RRRR, ADM or AEA**). Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1)**.

  **B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

    (1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

    (2) **POINT OF SALE REQUIREMENTS:**

      (A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)** and any such repair, shall be completed prior to final verification of Property, unless Otherwise Agreed. Defensible space compliance shall be determined as agreed in C.A.R. Form FHDS. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

      (B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

    (3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

    (4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

  **C. HOME WARRANTY:**

    (1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.

    (2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

  **A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

    (1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

    (2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

    (3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

                             ┌─Initial─┐                            ┌─DS─┐

 
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    623 N Rexford Dr.

Filed 01/02/25    Case 24-25181    Doc 66

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96
Property Address: 623 N Rexford Dr, Beverly Hills, CA 90210    Date: **December 26, 2024**

    (4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.

**B. LEAD DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").
    (2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: (i) a home hardening disclosure required by law; and (ii) a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and (iii) a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer (i) a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and (ii) an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1), 11B, 11C,** and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A, B, C** or **D,** and defensible space addendum in **paragraph 11D,** whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**
    (1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A, B, C,** or **D,** or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.
    (2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F,** Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers (i) to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR** (ii) to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR** (iii) to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area, Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1),** if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**L. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    (1) Seller shall, within the time specified in **paragraph 3N(1),** disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

Initial
Buyer's Initials  EdM /_____

DS
Seller's Initials  /_____

**RPA REVISED 12/24 (PAGE 8 OF 17)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: *623 N Rexford Dr, Beverly Hills, CA 90210*        Date: *December 26, 2024*

   (2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**M. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**N. BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**O. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

  **A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

  **B.** Buyer Investigations include, but are not limited to:
    (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
      (A) A general home inspection.
      (B) An inspection for lead-based paint and other lead-based paint hazards.
      (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
      (D) Any other specific inspections of the physical condition of the land and improvements.
    (2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

  **C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

  **D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

  **E.** **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

  **A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

  **C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

  **D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

  **E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**RPA REVISED 12/24 (PAGE 9 OF 17)**     Buyer's Initials _EdM_ / _____     Seller's Initials _RR_ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 17)**

Property Address: *623 N Rexford Dr, Beverly Hills, CA 90210*     Date: **December 26, 2024**

   **F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

   **G.** Buyer shall receive a "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

   **A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11H, 11K, 11L, 11M, 11N, 11O, 13A, 13D, and 32.**

   **B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**
     **(1)** Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.
     **(2)** Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.
     **(3)** Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.
     **(4)** **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

   **C.** **SELLER RIGHT TO CANCEL:**
     **(1)** **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
     **(2)** **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8H**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 26**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 32**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.
     **(3)** **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

   **D.** **BUYER RIGHT TO CANCEL:**
     **(1)** **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.
     **(2)** **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.
     **(3)** **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**RPA REVISED 12/24 (PAGE 10 OF 17)**     Buyer's Initials  / _____     Seller's Initials  / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 17)**

Property Address: *623 N Rexford Dr, Beverly Hills, CA 90210*      Date: *December 26, 2024*

**E. NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others. Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F. EFFECT OF REMOVAL OF CONTINGENCIES:**
  (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain insurance.
  (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G. DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). **Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to **paragraph 7B**; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS AND AGENTS:**
**A. COMPENSATION:**
  (1) **Timing of Broker Compensation:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
  (2) **Buyer Representation; Seller Payment to Compensate Buyer's Broker:** Buyer affirmatively represents that Buyer, at the time this offer is made, has a written agreement with Buyer's Broker that: **(i)** is valid; **(ii)** covers the Property; and **(iii)** provides for compensation for no less than the amount stated in **paragraph 3G(3)**. If any representation (i)-(iii) is not true, then Seller has no obligation to pay Buyer's Broker. The amount of compensation, if a percentage, will be based on the final purchase price. Buyer's obligation to pay Buyer's Broker shall be offset by any amount that Seller pays Buyer's Broker.
  (3) **Third party beneficiary:** Seller acknowledges and agrees that Buyer's Broker is a third-party beneficiary of this agreement and may pursue Seller for failure to pay the amount specified in this document.


Buyer's Initials   *EdM*   /       Seller's Initials    /    

**RPA REVISED 12/24 (PAGE 11 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 17)**

Filed 01/02/25      Case 24-25181      Doc 66

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96
Property Address: 623 N Rexford Dr, Beverly Hills, CA 90210      Date: **December 26, 2024**

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A. ESCROW INSTRUCTION PARAGRAPHS: The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller** to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11L(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 31, 32, 33, and 34.** The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B. ESCROW HOLDER GENERAL PROVISIONS:** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11**, or elsewhere in this Agreement.

**C. COPIES; STATEMENT OF INFORMATION; TAX WITHHOLDING INSTRUCTIONS:** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H**.

**D. BROKER COMPENSATION:**

(1) **PAYMENT:** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A**. If a Copy of the separate compensation agreement(s) is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

(2) **COMPENSATION DISCLOSURE:** Escrow Holder shall provide to Buyer a closing statement or other written documentation disclosing the amount of compensation paid to Buyer's Broker. Escrow Holder shall provide to Seller a closing statement or other written documentation disclosing: **(i)** the amount of compensation paid to Seller's Broker; and **(ii)** if applicable pursuant to **paragraph 3G(3)** or other mutual instruction of the parties, the amount paid to Seller for Buyer's Broker compensation. Escrow Holder's obligation pursuant to **paragraph 19D**, is not intended to alter any preexisting practice of Escrow Holder to issue, as applicable, joint or separate closing statements. Escrow Holder's obligation pursuant to **paragraph 19D** is independent of, but may be satisfied by, any closing statement mandated by Buyer's lender.

**E. INVOICES:** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F. VERIFICATION OF DEPOSIT:** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1)** and C.A.R. Form IDA. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G. DELIVERY OF AMENDMENTS:** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20. SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21. MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22. ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 27A**.

RPA REVISED 12/24 (PAGE 12 OF 17)    Buyer's Initials ⌐Initial ┐ _EAM_ / _____    Seller's Initials ⌐ _RPK_ ┐ / _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 17)**

Filed 01/02/25      Case 24-25181      Doc 66

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: <u>623 N Rexford Dr, Beverly Hills, CA 90210</u>      Date: <u>**December 26, 2024**</u>

23. **ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B.** Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K,** Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA). Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment as specified in this paragraph.
24. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
25. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:
    A. **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.
    B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**
    C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.
    D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.
    E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.
    F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.
    G. **"Close Of Escrow",** including **"COE",** means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.
    H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.
    I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.
    J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.
    K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (i) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it is located in the inbox for the applicable Party or Authorized Agent; or (ii) an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.
    L. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    N. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 33** or **paragraph 34.**
    O. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.
    P. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    Q. **"Sign"** or **"Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

RPA REVISED 12/24 (PAGE 13 OF 17)     Buyer's Initials <u>   </u>  <u>   </u>    Seller's Initials <u>   </u>  <u>   </u>

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    623 N Rexford

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: 623 N Rexford Dr, Beverly Hills, CA 90210                    Date: **December 26, 2024**

---

**26. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials  _EdM_ / _____          Seller's Initials  _RPR_ / _____

**27. MEDIATION:**
   A.  The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B.  ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 28B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 28C; and (iii) Agent's rights and obligations are further specified in paragraph 28D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

---

**28. ARBITRATION OF DISPUTES:**
   A.  The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
   B.  EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
   C.  PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) The filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.
   D.  AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
   E.  **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

   **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials  _EdM_ / _____          Seller's Initials  _RPR_ / _____

---

 
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       623 N Rexford Dr.

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96
Property Address: 623 N Rexford Dr, Beverly Hills, CA  90210          Date: **December 26, 2024**

**29. FAIR APPRAISAL ACT NOTICE:**
   **A.** Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.
   **B.** If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.
**30. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.
**31. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
**32. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 33** or **34** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).
**33. OFFER**
   **A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**
   **B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
      (1) **Non-Individual (entity) Buyers:** One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
      (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____.
      (3) **Contractual Identity of Buyer:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
         (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
         (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
      (4) **Legally Authorized Signer:**
         (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 32** for additional terms.
         (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.
   **C.** The RPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.
   **D. BUYER SIGNATURE(S):**
   (Signature) By, _Estelle Arlene Marco_                                                  Date: 12/26/2024
      Printed name of Buyer/PR **Estelle Arlene Marco**
      ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____·_____
   (Signature) By, _____          Date: _____·_____
      Printed name of BUYER: _____
      ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
   ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

                                              ┌─Initial
**RPA REVISED 12/24 (PAGE 15 OF 17)**   Buyer's Initials   EAM, _____   Seller's Initials  , _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 17)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: *623 N Rexford Dr, Beverly Hills, CA 90210*          Date: *December 26, 2024*

**34. ACCEPTANCE**

   **A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer. **Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.** Seller shall return and include the entire agreement with any response.

      ☒ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)
      ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

   **B.** ☒ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

      (1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

      (2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____

      (3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.

         (A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);

         (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

      (4) **Legally Authorized Signer:**

         (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 32** for additional terms.

         (B) The name(s) of the Legally Authorized Signer(s) is/are: _____ *Kamaljit Kalkat* _____, _____ .

   **C.** The RPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

   **D. SELLER SIGNATURE(S):**

   (Signature) By, _____     Date: 12/26/2024

   Printed name of SELLER: *Diamond K LLC* _____

   ☒ Printed Name of Legally Authorized Signer: _____ *Kamaljit Kalkat* _____     Title, if applicable, _____

   (Signature) By, _____     Date: _____

   Printed name of SELLER: _____

   ☐ Printed Name of Legally Authorized Signer: _____     Title, if applicable, _____

   ☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

**OFFER NOT ACCEPTED:** _____ / _____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
        Seller's Initials

REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
PROCEED TO NEXT PAGE



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 17)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

Property Address: *623 N Rexford Dr, Beverly Hills, CA 90210*     Date: *December 26, 2024*

---

**REAL ESTATE BROKERS SECTION**

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4. **Agents' Signatures and designated electronic delivery address:**

    **A.** Buyer's Brokerage Firm *The Oppenheim Group*      DRE Lic. # *01983697*

    By _*Jason Oppenheim*_     *Jason Oppenheim* DRE Lic. # *01863254*    Date 12/26/2024

    By _348F9AAD8C134C0..._      DRE Lic. # _____ Date _____

    Address _____ City _____ State _____ Zip _____

    Email _____ Phone # _____

    ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
    ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

    **Designated Electronic Delivery Address(es): Email above or** _____

    ☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

    **B.** Seller's Brokerage Firm *The Oppenheim Group*      DRE Lic. # *01983697*

    By _*Jason Oppenheim*_     *Jason Oppenheim* DRE Lic. # *01863254*    Date 12/26/2024

    By _348F9AAD8C134C0..._      DRE Lic. # _____ Date _____

    Address *8604 Sunset Blvd.*     City *West Hollywood*     State *CA* Zip *90069*

    Email *jason@ogroup.com*     Phone # _____

    ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
    ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

    **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** _____

    ☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

---

Buyer's Initials _EdM_ / _____     Seller's Initials _[initials]_ / _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____

Escrow Holder _____ Escrow # _____

By _____ Date _____

Address _____

Phone/Fax/E-mail _____

Escrow Holder has the following license number # _____

☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).

    Agent or Seller Initials

---

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**RPA REVISED 12/24 (PAGE 17 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 17 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    623 N Rexford Dr.

Filed 01/02/25        Case 24-25181        Doc 66

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

**BUYER'S INVESTIGATION ADVISORY**
(C.A.R. Form BIA, Revised 12/21)

CALIFORNIA
ASSOCIATION
OF REALTORS®

THE
OPPENHEIM
GROUP

**Property Address** *623 N Rexford Dr, Beverly Hills, CA  90210*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

    I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

    J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

**BIA REVISED 12/21 (PAGE 1 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer    *Estelle Arlene Marco*                         *Estelle Arlene Marco* Date 12/26/2024
— Signed by: —27D7542F0FAD440...

Buyer                                                        Date

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**BIA REVISED 12/21 (PAGE 2 OF 2)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96



CALIFORNIA
ASSOCIATION
OF REALTORS®

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | |
|---|---|---|---|
| Seller | _(signature)_ | _Diamond K LLC_ Date 12/26/2024 |
| Seller | | Date |
| Buyer | _Estelle Arlene Marco_ | _Estelle Arlene Marco_ Date 12/26/2024 |
| Buyer | | Date |

Buyer's Brokerage Firm **The Oppenheim Group**    DRE Lic # **01983697**

By _Jason Oppenheim_
Jason Oppenheim    DRE Lic # **01863254**   Date 12/26/2024

Seller's Brokerage Firm **The Oppenheim Group**    DRE Lic # **01983697**

By _Jason Oppenheim_
Jason Oppenheim    DRE Lic # **01863254**   Date 12/26/2024

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

**FAIR HOUSING AND DISCRIMINATION ADVISORY**
(C.A.R. Form FHDA, Revised 12/24)

THE
OPPENHEIM
GROUP

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2024, California Association of REALTORS®, Inc.
**FHDA REVISED 12/24 (PAGE 1 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

E. ~~Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);~~

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,
   **(ii)** Charging that person higher rent or increased security deposit, or
   **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**
   A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
   B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
   C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
   D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
   E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
   A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
   B. State: **https://calcivilrights.ca.gov/housing/**
   C. Local: local Fair Housing Council office (non-profit, free service)
   D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
   E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**
   F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
   A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
   B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
   C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
   D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
   E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
   F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant _Estelle Arlene Marco_ | *Estelle Arlene Marco* Date | 12/26/2024 |
| Buyer/Tenant —27D7542F2FAEB4... DocuSigned by: | Date | |
| Seller/Housing Provider | *Diamond K LLC* Date | 12/26/2024 |
| Seller/Housing Provider —AF4C60CED4654F2... | Date | |

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FHDA REVISED 12/24 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96



CALIFORNIA
ASSOCIATION
OF REALTORS®

**THE OPPENHEIM GROUP**

### BUYER HOMEOWNERS' INSURANCE ADVISORY
**(C.A.R. Form BHIA, 6/24)**

1. **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding. In the absence of property insurance, the homeowner would be responsible for the full expense. If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest. Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes. The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2. **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be a specific contingency pertaining to insurance or may be part of an overall investigation contingency. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker. Additionally, if the property is part of an HOA, lenders may require and buyers will want to know that the HOA has adequate insurance to cover the areas for which the HOA is responsible.

3. **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies, due to rising replacement costs and an increase in natural disasters. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4. **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise. Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5. **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance. Resources on this State government webpage include: **(i)** Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues. The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance. The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6. **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies. Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

Buyer _Estelle Arlene Marco_        **Estelle Arlene Marco**   Date 12/26/2024
— 27D7542F0FAD440...

Buyer _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.



Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BHIA 6/24 (PAGE 1 OF 1)**

### BUYER HOMEOWNERS' INSURANCE ADVISORY (BHIA PAGE 1 OF 1)

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96



CALIFORNIA
ASSOCIATION
OF REALTORS®

**WIRE FRAUD AND ELECTRONIC FUNDS
TRANSFER ADVISORY**
(C.A.R. Form WFA, Revised 12/21)

THE
OPPENHEIM
GROUP

Property Address: **623 N Rexford Dr, Beverly Hills, CA 90210** _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

### ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | | |
|---|---|---|---|
| Buyer/Tenant | *Estelle Arlene Marco* | **Estelle Arlene Marco** Date 12/26/2024 |
| Buyer/Tenant | —27D7542F0FAD440... DocuSigned by: | Date |
| Seller/Landlord | | **Diamond K LLC** Date 12/26/2024 |
| Seller/Landlord | —AF4C60CED4654F2... | Date |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R E B S | L E I C | Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/21 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| | | | |
|---|---|---|---|
| Jason Oppenheim | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com | Phone: (310)990-6656     Fax: | 623 N Rexford Dr. |

Docusign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE**
(C.A.R. Form CCPA, Revised 12/22)

THE OPPENHEIM GROUP

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant ___*Estelle Arlene Marco*_____ Date __12/26/2024__

*Estella Arlene Marco*

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

DocuSign Envelope ID: C640818E-A02A-41A4-9F44-1581FE72BB96

**CALIFORNIA ASSOCIATION OF REALTORS®**

**THE OPPENHEIM GROUP**

## BUYER CONTINGENCY REMOVAL No. __1__
### (C.A.R. Form CR-B, Revised 6/24)

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Other _____
dated __12/26/2024__, ("Agreement"),
on property known as _____ **623 N Rexford Dr, Beverly Hills, CA  90210** _____ ("Property"),
between _____ **Estelle Arlene Marco** _____ ("Buyer")
and _____ **Diamond K LLC** _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1.  **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2.  **Buyer removes ONLY the following individually checked Buyer contingencies:** (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
    - **A.** ☐ Loan **(Paragraph 3L(1) and 8A)**
    - **B.** ☐ Appraisal **(Paragraph 3L(2) and 8B)**
    - **C.** ☐ Investigation of Property **(Paragraph 3L(3), 8C, and 12)**
      - (1) ☐ Entire Buyer's Investigation Contingency **(Paragraph 12)**
      - OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property **(Paragraph 12B(1))**
      - OR (3) ☐ All Buyer Investigations other than the physical attributes **(Paragraph 12B(2))**
      - OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT: ☐ Other: _____
    - **D.** ☐ Insurance **(paragraph 3L(4) and 8D)**
    - **E.** Review of Seller Documents:
      - (1) ☐ Review of All Seller Documents **(Paragraph 3L(5), 8E, 9B(6), 10A, and 11)**
      - OR (2) ☐ Review of All Seller Documents, EXCEPT:
        - ☐ Government Reports **(Paragraph 10A)**;
        - ☐ Statutory and other Disclosures **(Paragraph 11)**;
        - ☐ Other: _____
    - **F.** ☐ Preliminary ("Title") Report **(Paragraph 3L(6), 8F, and 13)**
    - **G.** ☐ Common Interest (HOA or OA) Disclosures **(Paragraph 3L(7), 8G and 11L)**
    - **H.** ☐ Review of leased or liened items **(Paragraph 3L(8), 8H, and 9B(6))**
    - **I.** Sale of Buyer's Property **(Paragraph 3L(9) and 8K)**
      - ☐ Entering into contract for Buyer's Property    ☐ Close of Escrow on Buyer's Property
    - **J.** ☐ Other: _____
3.  OR ☐ **ALL Buyer contingencies are removed, EXCEPT:**
    - ☐ Loan Contingency **(Paragraph 3L(1) and 8A)**;
    - ☐ Appraisal Contingency **(Paragraph 3L(2) and 8B)**;
    - ☐ Insurance **(Paragraph 3L(4) and 8D)**;
    - ☐ Contingency for the Close of Buyer's Property **(Paragraph 3L(9) and 8K)**;
    - ☐ Condominium/Planned Development (HOA) Disclosures **(Paragraph 3L(7), 8G and 11L)**;
    - ☐ Other: _____
4.  OR ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**
5.  **Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.**

    **NOTE:** If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document.

Buyer _Estelle Arlene Marco_ _____ **Estelle Arlene Marco** Date __12/26/2024__
     ⌐27D7542F0FAD440...
Buyer _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**CR-B REVISED 6/24 (PAGE 1 OF 1)**

## BUYER CONTINGENCY REMOVAL (CR-B PAGE 1 OF 1)